# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-AN-01856-SCT

*H. S. PRESTRIDGE, JR., J. HARRISON BURGER,
CHARLES TIMS AND WANDA TIMS
v.*

*CITY OF PETAL, MISSISSIPPI*

| | |
|---|---|
| DATE OF  JUDGMENT: | 10/25/2000 |
| TRIAL JUDGE: | HON. JASON H. FLOYD, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOLLY W. MATTHEWS |
| ATTORNEY FOR APPELLEE: | THOMAS W. TYNER |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED - 01/30/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J.,  EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from a final judgment of the Chancery Court of Forrest County approving the enlargement and extension of the boundaries of the City of Petal, Mississippi (hereinafter referred to as "Petal").  The objectors to the annexation, H.S. Prestridge, Jr., J. Harrison Burger, Charles Tims, and Wanda Tims (hereinafter referred to as the "Eastern Objectors"),  assert three issues on appeal: (1) the chancellor erred in finding that the City of Petal had met its burden of proof and in finding that the annexation is reasonable under the totality of the circumstances.   In evaluating the twelve indicia  in order to determine the

reasonableness of the annexation, the chancellor committed error of both fact and law; (2) the chancellor in ruling on the evidentiary matter committed error and the eastern annexation area objectors did not receive a full hearing on all issues; and (3) the chancellor made findings of fact which are not in the record and, therefore, the findings are in error.

¶2.     We find that the chancellor committed no reversible error and affirm.

## FACTS

¶3.     The City of Petal passed an ordinance extending its boundaries on October 20, 1998. Subsequently, on October 29, 1998, Petal petitioned for annexation that included two separate areas of land.  The two areas are being referred to as the Western Annexation Area and the Eastern Annexation Area.  The Western Annexation Area Objectors are not parties in this appeal.  The City of Petal presently consists of 9.7 square miles.  The trial court entered a memorandum opinion on June 27, 2000, and concluded that:

> [I]t is reasonable for Petal to annex the east proposed annexation area with the exception of the Hudson Trust Property, the Emma T. Russell property and Eric M. and Kathleen J. Lowery's property having been dismissed with prejudice earlier in this action by agreement of the City of Petal and the aforementioned property owners.

Following this opinion, three motions were filed: (1) a motion for a new trial  filed by the Eastern Objectors on July 5, 2000; (2) a motion to alter and amend findings of fact filed by Petal on July 6, 2000; and (3) a motion to alter and amend findings of fact filed by the Eastern Objectors on August 2, 2000.

¶4.     On September 5, 2000, the court  entered an order addressing these motions. The court made revisions to the judgment, yet the changes were consistent with its earlier conclusions.  The court also denied the motions.  The court entered a final judgment on

2

October 25, 2000. From this judgment the Eastern Objectors have perfected this appeal. Notice of appeal was filed on October 30, 2000.

## DISCUSSION

**I. WHETHER THE LOWER COURT WAS IN ERROR IN FINDING THAT THE CITY OF PETAL HAD MET ITS BURDEN OF PROOF AND THAT ANNEXATION IS REASONABLE UNDER THE TOTALITY OF THE CIRCUMSTANCES. EVALUATING THE TWELVE (12) INDICIA IN ORDER TO DETERMINE THE REASONABLENESS OF THE ANNEXATION, THE LOWER COURT COMMITTED ERROR OF BOTH FACT AND LAW.**

¶5.     Petal argues that the trial court's determination that the proposed annexation of the Eastern Annexation Area is reasonable pursuant to Miss. Code Ann. § 21-1-33 (2001) and was supported by substantial evidence. In reviewing appeals involving annexation, this Court recognizes that annexation is a legislative function. *Extension of the Boundaries of the City of Ridgeland v. City of Ridgeland*, 651 So.2d 548, 553 (Miss. 1995). Therefore, our standard of review is limited to a single question, whether the annexation of reasonable. *See **Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison***, 650 So.2d 490, 493 (Miss.1995). Moreover, we will not reverse the findings of a chancellor unless the chancellor applies an incorrect legal standard, is manifestly wrong, or the findings are not supported by substantial evidence. *In re Extension of the Boundaries of the City of Jackson v. City of Ridgeland*, 551 So.2d 861, 863 (Miss. 1989).

¶6.     The law of annexation is well-settled law in Mississippi. This Court recognizes twelve indicia of reasonableness:

> (1) the municipality's need to expand, (2) whether the area sought to be annexed is reasonably within a path of growth of the city, (3) potential health hazards from sewage and waste disposal in the annexed areas, (4) the

municipality's financial ability to make the improvements and furnish municipal services promised, (5) need for zoning and overall planning in the area, (6) need for municipal services in the area sought to be annexed, (7) whether there are natural barriers between the city and the proposed annexation area, (8) past performance and time element involved in the city's provision of services to its present residents, (9) economic or other impact of the annexation upon those who live in or own property in the proposed annexation area, (10) impact of the annexation upon the voting strength of protected minority groups, (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy economic and social benefits of the municipality without paying their fair share of taxes, and (12) any other factors that may suggest reasonableness.

*Madison,* 650 So.2d at 494.

¶7. Additionally, the twelve indicia are independent tests viewed together to determine reasonableness. However, "the ultimate determination must be whether the annexation is reasonable under the totality of the circumstances." *Id.*

### 1. Need to Expand

¶8. The Eastern Objectors argue that Petal does not need to expand because its population is decreasing and has been since 1980. The Eastern Objectors further assert that a city does not need to expand until it has developed 80% of the land within its city limits. The Eastern Objectors aver that Petal has only developed 50% of its land. Because the city is not experiencing growth, the Eastern Objectors aver that there is no need for Petal to acquire additional land.

¶9. Petal argues population is only one factor considered when determining whether a city needs to expand. Petal argues that a decrease in population does not preclude annexation. Petal claims that at least ninety-seven entities have located to Petal since 1997

4

and the rate of commercial and residential permits has steadily increased. Petal maintains that it cannot grow within the existing boundaries for several reasons: (1) a substantial portion of the western area of the city is located in the floodway of the Leaf River and that it is against federal regulations to develop in a floodway; (2) a substantial portion of the northern half of the city is located in areas that have severe slope (12% or higher) or floodway; and (3) severe slope soil and floodways are located in the southern portion of the city. Due to these development constraints, Petal argues that there is a shortage of land available for industrial and residential use. Therefore, development occurs on the outskirts of the city.

¶10. The chancellor found that:

> The vacant land analysis of the existing city of Petal shows that Petal has approximately 50.8% of its land now developed. This leaves 49.2% undeveloped, 25.3 % of which is unconstrained. The remaining 23.9% is constrained by either flood plain, flood way or severe slope. The unconstrained vacant land consisting of approximately 2.43 square miles, while available for development, has the ultimate constraint of ownership. Many of the owners do not wish to sell their land for development. The Court is therefore of the opinion that Petal has established by the evidence that it has need to expand.

¶11. Petal has exhibited a need to expand due to population growth. Petal's population did decrease between 1980 and 1990. However, Petal's population has increased since 1990 from 7,883 to an estimated 9,175 in the year 2000. Petal has also shown that commercial building permits and residential permits have increased. Furthermore, Petal is at a developmental standstill due to constrained land and unconstrained land made unavailable to Petal due to ownership. We find that the chancellor's finding that Petal has a need for expansion is supported by substantial evidence.

5

## 2. Path of Growth

¶12.    The Eastern Objectors claim that the trial court erred in finding that there was a path of growth in Petal.  The Eastern Objectors argue that no path of growth exists past the high school along Highway 42.  The Eastern Objectors further contend that the development of new subdivisions is occurring because of the growth of the nearby City of Hattiesburg.

¶13.    Petal argues that there are several paths of growth indicators: (1) the proposed Highway 42 corridor or bypass which will connect Interstate 59 to the Petal area; (2) the addition of a Super Walmart; (3) considerable residential development in the eastern annexation area; (4) the construction of the new First Baptist Church of Petal will be located in the eastern annexation area; and (5) the presence of Petal High School in the eastern annexation area.  Petal argues that this new access to the interstate will generate more traffic.  Petal contends that it is already experiencing an increased rate of traffic flow on Highway 42, Highway 11, and Central Avenue. Furthermore, residential and commercial development has followed the placement of the school in the eastern area.

¶14.    The chancellor found that the eastern annexation area was in the path of growth of the City of Petal.  In his analysis, he stated that:

> The east area lies along U.S. Highway 42.  There has been a substantial amount of growth along this corridor.  The high school for the Petal Municipal School District is located in the east annexation area.  Subdivisions also exist sporadically within this area.  The proposed Highway 42 corridor or bypass . . . will connect Interstate 59 to the Petal area.  Major intersections will be at the intersection of the new corridor and Highway 11; and the intersection of the corridor with existing Highway 42 on the eastern edge of the city.

¶15.    Michael Slaughter, a regional planning consultant, testified that Petal was in the path of growth because of the construction of the Highway 42 corridor.  He stated that the

construction by the Mississippi Department of Transportation will generate growth in Petal and the eastern annexation area. Slaughter stated that the traffic in the area had already increased because of the development in the area. Slaughter further suggested in his testimony that the eastern annexation area is in the path of growth due to its location for two reasons: (1) it is contiguous to the city, and (2) the corridors that will enter and leave the city are located in the eastern annexation area.

¶16.   Additionally, Michael Bridge, a regional planning consultant,  testified regarding the path of growth.  He stated that Petal was in the path of growth because of the interconnection of the traffic arteries, the spillover growth on the periphery of the city from Hattiesburg, and the extension of the infrastructure by the city.

¶17.   The testimony presented at trial provides substantial evidence of Petal's path of growth.   Therefore, we find that the trial court's finding was supported by substantial evidence and no manifest error was committed.

### 3. Natural Barriers

¶18.   Petal advances that there are no natural barriers between Petal and the eastern annexation area.   No evidence was introduced by the Eastern Objectors to refute this argument.  Furthermore, the chancellor found that no barriers existed between Petal and the proposed annexation area.  We find that the chancellor's finding was reasonable based on the evidence and no manifest error was committed.

### 4. Potential Health Hazards

¶19.   The Eastern Objectors contend that the chancellor's finding that there were potential hazards in the eastern annexation area was erroneous because no tests were taken and there

7

were no evaluations. The Eastern Objectors suggest that Petal only introduced as evidence seven pictures of broken septic tanks, but no evidence was introduced that diseases have been reported.

¶20. Petal argues that its evidence revealed that there was an improper discharge of sewage in the eastern annexation area which is a health hazard. Petal also argues that this discharge violates state law. One area in particular where Petal expresses concern is the Eastwood Heights Subdivision located in the eastern annexation area. Petal maintains that this subdivision is having problems with improper sewage disposal. Petal further advances that it introduced evidence that revealed the eastern annexation area is having problems with improper and illegal dumping of trash and garbage.

¶21. The chancellor determined that exhibits established health hazards emanating from sewage disposal and waste water disposal in the eastern annexation area. The chancellor found that the testimony revealed that the eastern annexation area has existing and potential health hazards which will become problematic if development continues in the area without annexation. Another problem the chancellor found is that the east annexation area is not connected to a central sewer.

¶22. Greg Stein of the Mississippi Department of Health testified to photos entered into evidence and to site evaluations he conducted in the eastern annexation area. Stein stated that, generally, he found that the septic tanks used in the area were unsuitable. He testified that he observed instances where he found positive discharge of untreated waste water. He testified that pictures introduced into evidence showed positive discharge of untreated waste water. He acknowledged that he observed what constituted health hazards because the

spread of disease is associated with untreated human waste. He further testified to instances of the failure of individual on-site systems (septic tanks). Stein explained that under state law that when individual systems malfunction and a central sewer system co-exists, the homeowner is required to connect to the central sewer and is not allowed to repair the malfunctioning on-site system. The evidence provided was sufficient to show that there are potential health hazards in the eastern annexation area. Therefore, we find no error in the chancellor's finding.

### 5. *Financial Ability to Provide Promised Services*

¶23.    The Eastern Objectors argue that the financial ability of Petal to make promised improvements is questionable. The Eastern Objectors assert this claim because they allege that Petal increased water and sewage rates after the trial in this matter.

¶24.    Petal maintains that it has the financial ability to make improvements with existing city reserves and general fund balances. The improvements include street lighting, bi-weekly trash pick up, solid waste disposal, zoning, fire protection, police protection, mosquito control, traffic control, drainage improvements, and installation and maintenance of water and sewer lines. Petal argues that it can pay for the improvements through other funding sources available to expanding cities, or the annexation may be funded by general obligation bonds. Although this was not an issue before the court, Petal defends its actions of raising water and sewer rates by suggesting that the increase was justifiable in order to meet the sewer and water needs. Petal advances that there had not been an increase in rates for five years.

¶25. The chancellor found that Petal has the financial resources to accomplish the improvements set out in its plans based on its general fund, financial statements, and budget. Additionally, the chancellor was satisfied that Petal could also utilize funds customarily obtained by cities involved in annexation projects.

¶26. Demery Grubbs, financial advisor to Petal and former Mayor of the City of Vicksburg, testified that the City of Petal had an excellent financial posture. Additionally, he described Petal's general fund and enterprise funds (water and sewer) as maintaining a 30% fund balance. Moreover, evidence was presented which showed that Petal had other financing options available to finance its proposed improvements. We find that the chancellor's finding that Petal has the financial ability to provide municipal services to the eastern annexation area was sufficiently supported by evidence presented in the annexation hearing.

¶27. The Eastern Objectors allege that Petal raised its water and sewer rates after stating to the court that it had adequate financial sources to fund its proposed improvements. In order to assign error on appeal, the issue must be raised at the trial level or it is waived. *Read v. State*, 430 So.2d 832, 838 (Miss. 1983). Nothing in the record reveals that Petal raised its water and sewer rates or raised the rates to fund proposed improvements especially since the rate increase allegedly happened after the conclusion of the trial in this matter. This assignment of error has not been properly preserved for the purposes of this appeal.

### 6. Zoning and Overall Planning

¶28. The Eastern Objectors contend that zoning is not needed in the area to be annexed. The Eastern Objectors also claim that the test is not whether zoning and planning would benefit the area, but whether it is needed.

¶29. Petal avers that it offers comprehensive planning, zoning ordinances, sign regulation, the requirement of building permits and building inspections, a building code based on the Southern Building Code, plumbing codes, mechanical codes and sewer ordinances, trash/junk ordinances and a garbage dumping ordinance. Petal argues that the eastern annexation area does not have a comparable system in place. Petal maintains that the eastern annexation area is in dire need of a zoning and planning program to meet the demanding needs of the developing eastern annexation area. Petal argues that it is important to have a zoning and planning plan in place before development to avoid problems that typically occur such as, incompatible land uses, subdivision deficiencies, overcrowded lots, narrow streets, traffic congestion, and inadequate community facilities. In addition, Petal advances that there is a need for building codes to help achieve a lower fire rating and to protect inhabitants and property values. Due to problems with abandoned vehicles and dilapidated structures, Petal avers that the eastern annexation area could benefit from ordinance enforcement.

¶30. The chancellor found that the evidence showed a need for zoning and planning in the eastern annexation area. Further, the chancellor found from the evidence that proper planning should be in place prior to development of the land. The chancellor noted that zoning and planning are important so as to avoid potential problems like those experienced by Petal prior to its incorporation.

11

¶31.    Petal's Mayor, Jack H. Gay, Jr., Michael Bridge, and Michael Slaughter all testified that the eastern annexation area was in need of planning and zoning.  One reason is to avoid problems that Petal had when it incorporated in 1974.  Some of those problems included incompatible land use, subdivision deficiencies, uncontrolled signage and narrow roads, lack of effective drainage, and inadequate design and enforcement.  Bridge testified that proper planning and zoning and the application of codes and ordinances can alleviate those type problems experienced by Petal.  Petal has an in-house zoning administrator and building inspector.  Additionally,  Petal already has zoning ordinances and building codes in place. We find that the chancellor's finding on this indicium is reasonable and supported by substantial evidence.

### 7. Need for Municipal Services

¶32.    The Eastern Objectors argue that finding that the eastern annexation area needed municipal services was erroneous because the area already has adequate police, fire, water, sewage, recreation and other services provided by Forrest County.  Further, the Eastern Objectors argue that Petal's plan does not include furnishing water to eastern annexation area citizens.

¶33.    Petal maintains that it offers services that Forrest County does not presently provide. Petal argues that the petition by residents in the eastern annexation area requesting annexation is evidence of the need for municipal police protection, municipal fire protection, land use and building code enforcement, and city water and sewer.  In addition, Petal contends that the eastern annexation area relies on a volunteer fire station and Petal would provide a fire station with full time fire protection in addition to additional hydrants, if

12

annexed. Petal claims that it would enhance police patrol, especially in the areas of traffic patrol and animal patrol.

¶34. Petal also suggests that there is a need for a sanitary sewer in the eastern annexation area and that septic tanks are not suitable for the area. Petal proposes that it will install 70,000 linear feet of 8" sewer main in the eastern annexation area and 11 sewer lift stations as well as other sewer and force mains. Petal claims that the eastern annexation area also needs drainage improvements that the city can provide. Petal maintains that it can also provide the eastern annexation area with trash service that picks up discarded furniture and appliances. Petal alleges that this service is not currently offered in Forrest County. Additionally, Petal argues that the eastern annexation area needs right-of-way maintenance as well. Finally, Petal advances that it can and does provide recreational facilities to residents of the eastern annexation area.

¶35. The chancellor opined that if Petal were allowed to annex, then the eastern annexation area would benefit from its comprehensive zoning ordinance, building code requirements with building inspections, fire department protection and various other services. Additionally, the chancellor noted that residents of the eastern annexation area had circulated a petition requesting annexation in order to receive the benefits of other residents of Petal.

¶36. Petal introduced evidence of citizens from the eastern annexation area requesting annexation. In a petition to the City of Petal, presented on March 20, 1995, the petitioners requested annexation for police protection, lower insurance premium, land use and building code enforcement, protection of property value, city water and sewer and new city taxes. The evidence further suggests the need for a sewer system in a number of the developing

13

subdivisions.  On the other hand, Eastern Objectors testified that they do not need the improvements.

¶37.   Whether the eastern annexation area actually needs improved services is subjective at best. ***In re Extension of the Boundaries of the City of Columbus v. City of Columbus***, 644 So. 2d 1168, 1178 (Miss. 1994).  Due to the conflicting evidence and this Court's standard of review, we find that the chancellor committed no manifest error in finding that the municipal services offered by Petal will benefit the residents in the eastern annexation area.

### 8. Past Performance

¶38.   The Eastern Objectors argue that the court erred in finding that Petal did an adequate job of providing services to present citizens.  The Eastern Objectors contend that credible evidence was presented to show that Petal did a poor job in enforcing its ordinances on trash and junk disposal, abandoned vehicles, and abandoned buildings.

¶39.   Petal argues that it does an adequate job of providing municipal services to its present residents in a timely and efficient manner.  Petal maintains that 98% of its citizens are connected to a sanitary sewer.  Petal also suggests that it has codes and ordinances in place. Petal avers that it continuously makes improvements in the areas of drainage, water and sewer, zoning, enforcing of ordinances, traffic street signage, and purchasing land for use by Petal citizens for recreation.

¶40.   The chancellor found that, since its incorporation, Petal provided adequate services to its citizens. The chancellor further noted that when Petal incorporated, it had problems with substandard streets, drainage system, water, sewer, mixed land uses and inadequate

14

community facilities. However, the chancellor acknowledged that Petal has made many improvements in order to adequately and timely meet the needs of its residents.

¶41. The evidence reveals that since Petal's incorporation, it has made phenomenal strides toward improving the city and its services to the residents of Petal. Mayor Gay testified that since incorporation, the city has constructed a new city hall and police station, connected 98% of all citizens to the central sewer and that nearly 100% of all citizens eligible are on the city's water system. The Mayor further testified that the city has been given a Class 7 fire rating, thereby lowering fire insurance premiums. Petal has implemented zoning and code ordinances and hired personnel to enforce them in order to prevent future problems that Petal encountered at incorporation. We find that the chancellor's finding on this indicium was reasonable.

### 9. Impact on Property Owners

¶42. The Eastern Objectors argue that Petal intentionally misled the court by announcing an increase in rates after the matter was heard, but before the judgment was entered. The Eastern Objectors advance that the majority of the eastern annexation area residents have no desire to be a part of Petal.

¶43. Petal argues that the annexation will make a positive impact on the eastern annexation area for the following reasons: enhanced police and fire protection, reduced fire insurance rates, street improvements, street lighting, drainage improvements, garbage and trash collection, sanitary sewer, and water in conformance with Petal's services and facilities plan. The eastern annexation area will also benefit from a planning and zoning plan, code enforcement protective ordinances, animal control and savings on their monthly telephone

15

bill. Petal maintains that although the eastern annexation area residents will be subjected to a tax increase due to the annexation, they will be receiving enhanced and additional services.

¶44. From the testimony, the chancellor found that the eastern annexation area would receive enhanced police and fire protection, reduced fire insurance rates, street and drainage improvements, maintenance, street lighting, garbage and trash collection, and sanitary sewer and water. Also the chancellor adjudged from the testimony that the financial impact on the eastern annexation area residents in comparison to the benefits could not be significant.

¶45. Testimony was presented for and against the annexation. Testimony offered by Petal advanced that the increased taxes to be paid by the eastern annexation area would be offset by lower fire insurance premiums, and telephone rates. With the exception of raising taxes, we find that the annexation will have no adverse impact on the residents of the eastern annexation area. Accordingly, "[t]he mere fact that residents and landowners will have to start paying city property taxes is not sufficient to show unreasonableness." *City of Jackson*, 551 So.2d at 868. On the contrary, we agree with the chancellor that the eastern annexation areas will benefit from municipal services, including but not limited to: enhanced police and fire protection, reduced fire insurance rates, street and drainage improvements, maintenance, street lighting, garbage and trash collection, and sanitary sewer and water. Thus, we find that the chancellor's findings here are reasonable.

### 10. Dilution of Minority Voting Strength

¶46. Petal advances that there will be no negative impact on the voting strength of protected minority groups. The Eastern Objectors make no request for review on this indicium. Based on the evidence presented, the chancellor found that the annexation would

16

not negatively affect voting strength of minorities, in particular, African Americans. This Court has ruled that this indicium is generally not afforded great weight where it is not raised by a party with standing. *City of Columbus,* 644 So. 2d at 1180. No evidence was presented that would prevent the court from finding that minority voting strength will not be negatively affected. Therefore, we find that the chancellor committed no manifest error in its analysis of this indicium.

### *11. Benefits without Taxes*

¶47. The Eastern Objectors contend that the eastern annexation area residents pay their fair share of taxes through sales tax. Petal maintains that the eastern annexation area residents receive many benefits because of their proximity to Petal. For instance, Petal argues that they use parks and take advantage of recreational programs for free and also receive lower fire insurance rates due to Petal's Class 7 rating. Petal also argues that its fire department responds to fires in the eastern annexation area that involve commercial, industrial, and public facilities at no cost. Moreover, Petal contends that eastern annexation area residents take advantage of medical, educational, social, cultural and religious facilities as well as streets and safety provisions provided by Petal.

¶48. The chancellor found that eastern annexation area residents are receiving benefits from Petal because of their close proximity to the corporate limits. The chancellor also found that those benefits included, but were not limited to, use of parks and recreational programs, response to fires in commercial, industrial, or public entities, medical, educational, social, cultural and religious facilities.

17

¶49.    Michael Bridge testified that Petal is the closest location to the eastern annexation to meet most of the needs of the residents. We agree with the chancellor's finding that eastern annexation residents benefit from the municipal services as summarized above. Therefore, we find that it is only fair that they share the tax responsibility. We find that the evidence is reasonable to support the chancellor's finding.

### 12. Others

¶50.    Petal argues that another factor which supports its challenge for annexation is that Petal provides a municipal separate school district. The Eastern Objectors presented no argument as to this indicium. The chancellor made no finding in regard to the eastern annexation area on this indicium.

**II.    WHETHER THE LOWER COURT, IN RULING ON EVIDENTIARY MATTERS, COMMITTED ERROR, AND THE EASTERN ANNEXATION AREA OBJECTORS DID NOT RECEIVE A FULL HEARING ON ALL ISSUES.**

¶51.    The Eastern Objectors assert that the court erred in not allowing the attorney who represented the Eastern Objectors to cross-examine western annexation witnesses and that the denial deprived the Eastern Objectors of due process. The Eastern Objectors contend that the right to cross-examine a witness in a civil trial cannot be denied. The Eastern Objectors further contend that the eastern and western areas were represented by two separate counsel, that the areas were not contiguous, that the interest of each side was different and that they put on different proof. In addition, the Eastern Objectors complain that a witness is open for any and all questions relevant to the issue being tried.

¶52. Petal argues that the trial court did not abuse its discretion in refusing to allow the Eastern Objectors to cross-examine the Western Objectors' witnesses about issues concerning the western annexation area. Petal argues that the trial court has inherent power to limit cross-examination to relevant matters and advances that the examinations were simply limited to question concerning the area the witness spoke on behalf of, either east or west. Petal maintains that the Eastern Objectors were given an opportunity to fully cross-examine Petal's witnesses. Petal argues that the Eastern Objectors failed to preserve this argument on appeal by making an offer of proof. Petal advances that the Eastern Objectors put on no proof that they were prejudiced.

¶53. Whether evidence is relevant and/or admissible is left to the discretion of the chancellor, and reversal occurs only where that discretion has been abused. *Century 21 Deep S. Props., Ltd. v. Corson*, 612 So.2d 359, 369 (Miss. 1992). Moreover, M.R.E. 611 gives the court discretion to direct the mode and order of interrogation of a witness. It states in pertinent part:

> **(a) Control by Court**. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

> **(b) Scope of Cross-Examination.** Cross-examination shall not be limited to the subject matter of direct examination and matters affecting the credibility of the witness.

M.R.E. 611. "The scope of cross-examination though ordinarily broad, is within the sound discretion of the trial court and the trial court possesses inherent power to limit cross-examination to relevant matters." *Heflin v. State,* 643 So.2d 512, 518 (Miss.1994).

¶54. During the direct examination of Steven Lavell Floyd by Jolly W. Matthews, attorney for the Eastern Objectors, the following exchange transpired:

> Q. Now you, as a developer, and as a professional real estate man, is that how you want to present your city to the world; that unsightly mess?
>
> > BY MR. TYNER: And to which we object, if the Court please. We're talking about developing, we're not talking about Richton Tie and Timber.
> >
> > BY MR. MATTHEWS: Judge, he's on cross. I didn't bring him here.
> >
> > BY MR. TYNER: He's not on your cross. He's on my cross.
> >
> > BY THE COURT: All right, you've got two (2) annexation areas. You've got the east and the west. You represent the east. And you represent the west. Mr. Tyner represents the petition of the city. We can't get around the Court's ruling on what witnesses are, can testify to by using cross examination between the two objectors. Do you understand what I mean? In other words, Mr. Rogers cannot use this witness to talk about things, because he did not provide the city with that information on Discovery. You, Mr. Matthews can't get around that limitation by saying, "Now I'm on cross, and I can ask him about anything." So, I'm going to sustain the objection. Do you understand the Court's ruling?
> >
> > BY MR. MATTHEWS: Then my cross examination is limited to what Mr. Rogers talked about?
> >
> > BY THE COURT: I'm considering you and Mr. Rogers as co-counsel, so to speak.
> >
> > BY MR. MATTHEWS: Judge, we do not have - -

20

BY MR. MATTHEWS: Well, my response is, Judge, I didn't align the parties. The City of Petal brought this matter and aligned - - the parties were aligned by the way they brought it. But Mr. Rogers and I do have diverse interests in this matter, and in some instances totally different proof.

BY THE COURT: Well, I understand you're representing different areas in this annexation endeavor.

BY MR. MATTHEWS: Yes sir.

BY THE COURT: But you are both in opposition to the city's annexation lawsuit. So, I don't see that - I'm going to consider your testimony more in line of a direct testimony than cross examination, direct questioning rather than cross. And therefore, I'm not going to allow you the freedom that a pure cross examination is entitled to, which is unlimited. Your examination will be limited.

¶55. We find that the chancellor properly exercised his discretion in limiting the Eastern Objector's cross-examination of the Western Objectors' witnesses because they were not in opposition. The Eastern Objectors directs this Court's attention to *Jones v. Babst,* 323 So.2d 757 (Miss. 1975), (*overruled on other grounds by Toliver v. Gen. Motors Corp.*, 482 So.2d 513 (Miss. 1985), in support of their argument. However, we agree with Petal that this case is not relevant here. It holds that when the interests of defendants are different, the defendants can have separate peremptory challenges and each has the right to cross-examine each of the plaintiff's witnesses. *See Jones*, 323 So.2d at 760. The Eastern Objectors were not limited in their cross-examination of the witnesses, only the co-defendant, the Western Objectors. Therefore, we find that while it may be true that the two areas have diverse interests, essentially they both contended that their areas should not be annexed to Petal. For the reasons stated above, we find that the chancellor did not abuse his discretion.

21

**III. WHETHER THE CHANCELLOR MADE FINDINGS OF FACT WHICH ARE NOT IN THE RECORD AND, THEREFORE, THE FINDINGS ARE IN ERROR.**

*Exclusion of Witnesses*

¶56.  The Eastern Objectors aver that the court erred in failing to allow Eastern Objectors named in the pleading to be classified as parties and to be allowed to remain in the courtroom.  The Eastern Objectors claim that it would have been too numerous to include 500-600 Eastern Objectors in the style, so they only listed four names and listed the other objectors in Exhibit "A" attached  to the Eastern Objectors' answer.

¶57.  Petal argues that the court properly excluded witnesses that were not parties to the litigation from the courtroom.   Petal also argues that it was proper to remove them from the courtroom to ensure that their testimony would not be affected by other witnesses.

¶58.  M.R.C.P. 10(a) states in pertinent part that "[i]n a complaint the title of the action shall include the *names of all the parties*, but in all other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of the other parties."(emphasis added).  Furthermore, M.R.E. 615 states:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

¶59.  We find that because the 500 plus names of other witnesses from the eastern annexation area were not initially listed  as parties on the original complaint, they are not considered parties in this matter.  We also find  that when the rule of sequestration of

22

witnesses was invoked the eastern annexation witnesses were properly excluded from the courtroom. Thus, we find that the chancellor committed no error in allowing only the four named persons listed as parties to remain in the courtroom, once the rule was invoked.

*Exclusion of Evidence*

¶60. The Eastern Objectors also assign error to the exclusion of exhibits that they claim used facts and information already in evidence. Petal contends that the trial court properly refused to admit evidence that was not previously disclosed in response to Petal's discovery request. Additionally, Petal argues that the Eastern Objectors waived this objection by not making an offer of proof after the chancellor sustained this objection.

¶61. A chancellor's ruling on whether evidence is excluded as a sanction for violating discovery rules rests within the sound discretion of the trial court and cannot be reversed unless an abuse of that discretion is shown. ***M & M Pipe & Pressure Vessel Fabricators, Inc. v. Roberts,*** 531 So.2d 615, 620 (Miss.1988). Discovery rules are designed to prevent trial by ambush. ***Kinard v. Morgan***, 679 So.2d 623, 626 (Miss.1996). Therefore, a court may exclude undisclosed evidence of a party who fails to comply with a discovery order. M.R.C.P. 37(b)(2)(B); ***Ladner v. Ladner***, 436 So.2d 1366, 1370 (Miss.1983). However, this Court has also held that:

> "[e]xclusion of evidence is a last resort. Every reasonable alternative means of assuring the elimination of any prejudice to the moving party and a proper sanction against the offending party should be explored before ordering exclusion." *McCollum v. Franklin,* 608 So.2d 692, 694 (Miss.1992). "In the imposition of sanction [s], the trial court has considerable discretion in matters pertaining to discovery and its orders will not be disturbed in the absence of abuse of discretion." *Kilpatrick v. Mississippi Baptist Medical Ctr.,* 461 So.2d 765, 767 (Miss.1984).

23

*TXG Intrastate Pipeline Co v. Grossnickle*, 716 So.2d 991, 1013 (Miss. 1997). Furthermore, sanctions can be imposed even if no court order has been entered compelling discovery. *Id.* at 1013.

¶62.    During his direct testimony, Joseph Lusteck, an urban planner, testified about census results for Petal between 1990 and 2000. He stated that he had reduced his findings to writing if it would be useful to the court. The attorney for Petal objected to the introduction of Lusteck's report because it was not furnished during discovery. The court sustained this objection. The Eastern Objectors have failed to demonstrate how they were prejudiced by the exclusion of this evidence. We find that the chancellor did not abuse his discretion in excluding Lusteck's report.

## CONCLUSION

¶63.    This Court finds that the approval of the annexation was proper. Furthermore, the chancellor did not abuse his discretion in limiting cross-examination of the Western Objectors by the Eastern Objectors, in his exclusion of witnesses from the courtroom after the sequestration rule had been invoked, or in excluding evidence not identified during discovery. For the reasons stated, we affirm the judgment of the chancery court.

¶64.    **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. COBB, J., CONCURS IN RESULT ONLY. McRAE, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION.**

**McRAE, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

24

¶65. I concur in the result reached only because of this Court's past rulings. However, as the majority has stated on page 3, annexation is a legislative function when it involves municipal boundaries. Since the Legislature has the power to fix the boundaries of the municipality through its incorporation power, it should be the governmental entity to either enlarge or shrink corporate boundaries. Our Constitution of 1890 states:

> The legislature shall pass general laws, under which local and private interest shall be provided for and protected, and **under which cities and towns may be chartered and their <u>charters amended</u>, and under which corporations may be created, organized, and their <u>acts of incorporation altered</u>**; and all such laws shall be subject to repeal or amendment.

Miss. Const. art. 4, § 88 (emphasis added).

¶66. This Court should only be involved in annexation cases when they involve a due process violation. To do otherwise means that this Court will continue to usurp a legislative function.

¶67. Currently, our rulings give the chancellor broad discretion in deciding annexation issues. His decision is easily substantiated by simply placing one sentence for each "indicia of reasonableness" in favor of the prevailing party in his opinion. There is no guarantee that the municipality will provide the residents of the annexation area any better protection or services than what they currently are receiving. The Legislature is the more appropriate voice for the people. "[T]he Legislature acts out of concern with what is best for the overall community, not as the courts do, applying legal standards, evidentiary rules and deciding for a particular party." *In re Extension of the Boundaries of the City of Batesville*, 760 So.2d 697, 709 (Miss. 2000) (McRae, J., dissenting) (citing *In re Enlargement of the Corporate Limits of the City of Hattiesburg* 588 So.2d 814, 836 (Miss. 1991)(Robertson, J., concurring)).

¶68. "Unless this Court leaves annexations to legislative action, they will be thorns in the state judicial system's side forever, questioning reasonableness and adding more indicia in an attempt to

25

achieve an 'answer' at great expense to all litigants with no guarantees or recourse provided by the city that promises, but fails to deliver." ***In re Extension of the Boundaries of the City of Batesville***, 760 So.2d at 710. Accordingly, I concur in the result only.