NO. 5-99-0238

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Wayne County.  

)    

)  No. 98-CM-169

)

ANNE F. COX, )  Honorable

)  Robert M. Keenan, Jr.,

     Defendant-Appellee. )  Judge, presiding.  

________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

Anne F. Cox (defendant) was charged by way of information with unlawful possession of cannabis pursuant to section 4(a) of the Illinois Cannabis Control Act (720 ILCS 550/4(a) (West 1998)).  A motion-to-suppress hearing was held, and the trial court found that the police violated defendant's fourth amendment rights (U.S. Const., amend. IV) and privacy rights under the Illinois Constitution (Ill. Const. 1970, art. I, §6).  The State filed a timely notice of appeal on April 5, 1999.  On appeal, the State presents one issue for review: whether the government needed at least reasonable suspicion to conduct a walk-

around of defendant's vehicle by a drug-sniffing dog while defendant was being lawfully detained at a routine traffic stop.  For the reasons that follow, we affirm. 

I.  FACTS

On July 20, 1998, the State charged defendant by way of information with the offense of unlawful possession of cannabis.  On February 3, 1999, defendant filed a motion to suppress alleging that defendant was arrested for the offense of not having a rear registration light and that Illinois law does not permit the police to search vehicles after routine traffic stops unless the police possess a strong reason to suspect that the vehicle is carrying drugs or weapons.

On March 18, 1999, a hearing on defendant's motion to suppress was held before the trial court.  Defendant called Matt McCormick, a Fairfield police officer, as a witness.  McCormick testified that on July 18, 1998, around 2:21 a.m., he observed that defendant's vehicle did not have a rear registration light.  McCormick stopped the vehicle.  When he spoke with defendant, he did not smell marijuana in the car.  Just after the stop, McCormick notified Deputy Zola, who subsequently arrived at the scene with canine drug dog Tango.  McCormick believed that it took about 15 minutes for Deputy Zola and Tango to arrive.  McCormick had testified that it ordinarily takes 10 to 15 minutes for him to write a ticket.  McCormick was busy writing a traffic citation when Deputy Zola and Tango arrived.  The dog sniffed about the vehicle and positively alerted the police to the presence of contraband.  McCormick testified that the vehicle was first searched after the drug dog alerted, whereupon cannabis residue and seeds were found on the floorboard of the car.  After observing this evidence of contraband, Deputy Zola asked defendant to empty her pockets.  Cannabis was found on defendant's person.  McCormick stated that he was still in the process of writing the traffic ticket when Deputy Zola and Tango arrived.

After McCormick testified, the parties presented their respective arguments.  Defendant argued two bases in support of her motion to suppress: (1) no probable cause existed to justify a search of the exterior of the vehicle by the canine unit and (2) the length of the detention was unreasonably long, constituting a seizure.  The trial court took the matter under advisement.

On March 30, 1999, the trial court entered a written order granting defendant's motion to suppress.  The trial court relied on the Appellate Court, Third District, decision in 
People v. Easley
, 288 Ill. App. 3d 487, 680 N.E.2d 776 (1997), and concluded, "[T]he officer's testimony revealed no reasonable basis which would justify the walk[-]around."  The trial court held that because the walk-around was illegal, the pat-down of defendant was illegal and defendant should have been allowed to leave.  The trial court did not make a finding on the question of whether defendant was unreasonably delayed.

II.  ANALYSIS

The first issue on appeal is whether the exterior sniff of defendant's vehicle violated her fourth amendment right against unreasonable searches and seizures.  Where there is no issue of fact, we conduct a 
de novo
 review of a trial court's determination of reasonable suspicion or probable cause on a motion to suppress.  
Ornelas v. United States
, 517 U.S. 690, 698-700, 134 L. Ed. 2d 911, 920-21, 116 S. Ct. 1657, 1663 (1996); 
People v. Kidd
, 175 Ill. 2d 1, 25-26, 675 N.E.2d 910, 922 (1996); 
Easley
, 288 Ill. App. 3d at 491, 680 N.E.2d at 779.

The fourth amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ***."  U.S. Const., amend. IV.  It does not hinge upon the place in question but, rather, hinges upon whether the person has a reasonable expectation of privacy.  
Katz v. United States
, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511 (1967); 
People v. Neal
, 109 Ill. 2d 216, 221, 486 N.E.2d 898, 901 (1985).

The State presents the argument that our United States Supreme Court has ruled, in 
United States v. Place
, 462 U.S. 696, 707, 77 L. Ed. 2d 110, 103 S. Ct. 2637, 2644-45 (1983), that a canine sniff does not constitute a search under the fourth amendment, and since the canine unit arrived while the officer was still writing defendant's traffic ticket, no detention occurred and no fourth amendment issue arose.  See 
Place
, 462 U.S. at 697-710, 77 L. Ed. 2d 110, 103 S. Ct. at 2639-46.  The State's argument hinges upon the contention that a canine sniff is not a search.  If that contention is correct, the only way the fourth amendment is applicable is if the police detained the driver and/or vehicle for longer than it takes to write a traffic ticket, which would then trigger the seizure aspect of the fourth amendment.  This argument is consistent with the majority holding in 
Place
.

In 
Place
, the defendant was traveling from Miami International Airport to New York's La Guardia Airport.  While in line in Miami, law enforcement officers' suspicions were aroused, and they approached the defendant.  The defendant consented to have his two bags searched, but his plane was departing so the law enforcement officers let the defendant proceed on his way.  After finding some discrepancies with the address tags on his luggage, the law enforcement officers contacted the Drug Enforcement Agency (DEA) in New York.  Upon the defendant's arrival in New York, the DEA agents approached the defendant.  They told the defendant that they believed he was carrying narcotics, and they asked for and received identification.  The defendant refused to consent to a search of his luggage, upon which the DEA agents told him that they were going to a federal judge to obtain a search warrant.  The DEA agents took the luggage to Kennedy Airport, and there a canine unit performed a canine drug sniff.  The dog positively alerted the agents to narcotics in one of the suitcases.  The sniff occurred 90 minutes after the agents seized the luggage from the defendant.  The agents used the positive canine alert to obtain a search warrant.  They then opened the suitcase and discovered cocaine.  The defendant pleaded guilty, after his motion to suppress was denied.  
Place
, 462 U.S. at 697-701, 77 L. Ed. 2d 110, 103 S. Ct. at 2639-41.  The case proceeded to the United States Supreme Court, which held that seizure of the luggage violated the fourth amendment, based upon the seizure of the luggage without probable cause.  
Place
, 462 U.S. at 706, 77 L. Ed. 2d 110, 103 S. Ct. at 2644.  In 
dicta
, the Court stated that if the DEA agents had a dog present to sniff the luggage immediately, there would not have been a fourth amendment issue, because there would not have been seizure (for 90 minutes), nor would there have been a search, because the canine sniff is not a search under the fourth amendment.  
Place
, 462 U.S. at 707, 77 L. Ed. 2d 110, 103 S. Ct. at 2644-45.

The State analogizes the present case to 
Place
.  It argues that since the canine unit arrived while Officer McCormick was writing the traffic ticket, no seizure of person or vehicle occurred, and that since the exterior canine sniff does not constitute a search, no fourth amendment issue is present.  This argument is consistent with the majority opinion in 
Place
, which bluntly states in 
dicta
, "[W]e conclude that the particular course of investigation that the agents intended to pursue here–exposure of respondent's luggage, which was located in a public place, to a trained canine–did not constitute a 'search' within the meaning of the Fourth Amendment."  
Place
, 462 U.S. at 707, 77 L. Ed. 2d 110, 103 S. Ct. at 2645.  Therefore, we do not agree with the trial court that the exterior vehicle canine sniff violated defendant's fourth amendment rights in this case.

Article I, section 6, of the 1970 Illinois Constitution states, "The people shall have the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches, seizures, invasions of privacy[,] or interceptions of communications by eavesdropping devices or other means."  Ill. Const. 1970, art. I, §6.  The fourth amendment sets the minimum rights a person shall receive against unreasonable government search and seizure.  The Illinois Constitution can give people more protection.  The United States Supreme Court has ruled in 
Place
 that a canine sniff does not constitute a search under the fourth amendment.  
Place
, 462 U.S. at 707, 77 L. Ed. 2d 110, 103 S. Ct. at 2644-45.  However, a canine sniff may still constitute a search under section 6 of article I of the 1970 Illinois Constitution.

The Illinois Appellate Court, Third District, has found that reasonable suspicion is necessary for a dog sniff in 
Easley
, 288 Ill. App. 3d 487, 680 N.E.2d 776.  In 
Easley
 the defendant was pulled over for no rear registration light and failure to signal a turn.  The officer approached the vehicle and asked for the defendant's driver's license.  As the defendant removed his license, the officer noticed a business card decorated with a marijuana leaf.  This aroused the officer's suspicion, and he conducted a criminal check of the defendant.  The criminal history check revealed a past drug conviction.  The officer returned to the vehicle, at which time he noticed that the previously open ashtray was now closed.  The officer stated that the defendant was visibly nervous with perspiration.  The officer called a canine unit and informed the defendant that he and the passenger were free to leave but the vehicle would have to remain so a dog could sniff the exterior of the vehicle.  The canine unit arrived two minutes later and alerted the officers to the presence of contraband.  The positive alert provided the officers with probable cause to search the vehicle, which resulted in the finding of marijuana.  The court reasoned that the officer had sufficient reasonable suspicion to warrant a detention limited in scope.  The fact that the canine unit arrived in two minutes was important as to avoid a fourth amendment question of an illegal seizure without probable cause.  Once the canine unit positively alerted the officers to the presence of contraband, the officers had probable cause to search.  
Easley
, 288 Ill. App. 3d at 491-92, 680 N.E.2d at 778-81.  It should be noted that 
Easley
 required that government action be judged by a totality-of-the-circumstances standard, and facts that could be individually explained as innocent might still constitute reasonable suspicion when combined with all the facts in the case.  
Easley
, 288 Ill. App. 3d at 491-92, 680 N.E.2d at 780; see 
United States v. Finke
, 85 F.3d 1275, 1280 (7th Cir. 1996). 

Easley
 is a classic 
Terry
 investigatory stop.  See 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).  The officer's suspicions were aroused, and, as established in 
Terry
 and its progeny, he could investigate his suspicions until they were allayed or sufficient time passed so as to push the situation from an investigatory stop to a seizure.  
Easley
, 288 Ill. App. 3d 487, 680 N.E.2d 776.  In 1968, in 
Terry
, the United States Supreme Court recognized the narrow authority permitting police officers to make limited intrusions on an individual's personal security based on less than probable cause.  See 
Michigan v. Summers
, 452 U.S. 692, 698, 69 L. Ed. 2d 340, 101 S. Ct. 2587, 2591 (1981).  While initially implemented to protect police officers from concealed weapons by allowing a pat-down of a suspect's outer garments, 
Terry
 and its progeny have been extended to almost any situation in which a law enforcement officer has a reasonable suspicion of criminal activity.  
Terry
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; 
Adams v. Williams
, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); 
Summers
, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587; 
United States v. Cortez
, 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981); 
United States v. Brignoni-Ponce
, 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975).  The logic  of 
Terry
 lies in the balancing of the competing interests of a person's fourth amendment rights against the government's interest in preventing crime.  
Place
, 462 U.S. at 703, 77 L. Ed. 2d 110, 103 S. Ct. at 2642.

A 
Terry
 stop amounts to a brief intrusion to verify information or to ascertain criminal activity.  See 
People v. Koutsakis
, 272 Ill. App. 3d 159, 649 N.E.2d 605, 608 (1995); 
People v. Frazier
, 248 Ill. App. 3d 6, 14, 617 N.E.2d 826, 833 (1993).  The investigatory stop must be as brief as possible and last no longer than necessary to effectuate the purpose of the stop.  See 
Florida v. Royer
, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983); 
Koutsakis
, 272 Ill. App. 3d 159, 649 N.E.2d at 608.  During traffic stops, as is the case before us, the police may briefly stop and detain a vehicle that violates the traffic laws.  
Koutsakis
, 272 Ill. App. 3d 159, 649 N.E.2d at 608.  The officer may request the driver's license of the person operating the vehicle and may conduct a background check.  
Koutsakis
, 272 Ill. App. 3d 159, 649 N.E.2d at 608.  If no further suspicion is aroused, then the officer must allow the driver and vehicle to go.  See 
People v. Smith
, 208 Ill. App. 3d 44, 50, 566 N.E.2d 939, 943 (1991); 
Koutsakis
, 272 Ill. App. 3d at 159, 649 N.E.2d at 608.  This is the issue before us.  Did the police officer have the legal justification to call a canine unit to conduct an exterior canine sniff of defendant's vehicle?

In this case, the officer lacked reasonable suspicion sufficient to call the canine unit.  At the motion-to-suppress hearing, Officer McCormick could point to no fact that aroused his suspicion.  
Terry
 and its progeny clearly establish that when an officer investigates based on reasonable suspicion, he must be able to point to articulable facts that gave rise to said suspicion.  
Terry
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; 
Adams v. Williams
, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); 
Summers
, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587; 
United States v. Cortez
, 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981); 
United States v. Brignoni-Ponce
, 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574.

This holding is consistent with other jurisdictions with clauses in their state constitution similar to article I, section 6, of the 1970 Illinois Constitution
(footnote: 1).  In 
State v. Pellicci
, 133 N.H. 523, 580 A.2d 710 (1990), the New Hampshire Supreme Court decided a case involving a canine sniff of a vehicle.  In 
Pellicci
 the police conducted a three-month controlled substance sales investigation in the Portsmouth area.  The investigation involved monitoring Club Excalibur, a local spirits establishment.  Officers observed the defendant leave the establishment on multiple occasions with other patrons, drive to a park, and remain in his vehicle for 15 to 20 minutes.  On at least one occasion, the monitoring officers observed money exchanging hands, and on another occasion, they noticed passengers bending down from the waist, an action indicating cocaine inhalation.  On one evening, officers received a tip from a confidential informant that a drug transaction was about to occur.  Acting on the tip, an officer was stationed on the route from Club Excalibur to the park and pulled the defendant over to conduct a canine sniff.  The defendant challenged the validity of what he regarded as a search, while the State of New Hampshire relied on 
Place
 and argued that a canine sniff is not a search under the fourth amendment.  The New Hampshire Supreme Court agreed, at least partially, with both sides.  It held that according to 
Place
 a canine sniff is not a search; however, relying on part I of article 19 of the New Hampshire Constitution
(footnote: 2), the court held that the government needs articulable facts that give rise to a reasonable suspicion to justify a canine sniff.  The 
Pellicci
 court analogized the canine sniff to a 
Terry
 stop.  
Pellicci
, 133 N.H. 523, 580 A.2d 710.

In 
People v. Dunn
, 77 N.Y.2d 19, 564 N.E.2d 1054, 563 N.Y.S.2d 388 (1990), the New York police, prompted by information that controlled substances were being kept in an apartment leased by the defendant in Hamburg, New York, conducted a canine sniff in the common hallway of the apartment.  The dog positively alerted the police to the presence of contraband, and the police obtained a search warrant to search the apartment.  The search resulted in finding large amounts of marijuana and cocaine.  The defendant moved to suppress the evidence before the trial, claiming that the canine sniff constituted an unlawful warrantless search unsupported by probable cause.  The motion to suppress was denied.  The New York Court of Appeals held that pursuant to 
Place
 (a canine sniff is not a search under the fourth amendment (462 U.S. at 707, 77 L. Ed. 2d 110, 103 S. Ct. at 2644-45)), the government action did not violate the defendant's federal constitutional rights against unreasonable searches and seizures.  However, the court found that a canine sniff was a search under article I, section 12, of the New York Constitution (N.Y. Const., art. I, §12)
(footnote: 3).

In 
Pennsylvania v. Johnston
, 515 Pa. 454, 530 A.2d 74 (1987), the Pennsylvania Supreme Court ruled that a reasonable articulable suspicion is necessary for the government to conduct a canine sniff under article I, section 8, of the Pennsylvania Constitution (Pa. Const., art. I, §8)
(footnote: 4).  In 
Johnston
, a police officer observed two men carrying what appeared to be, from the officer's 17 years of experience, two bales of marijuana from a rental storage facility.  Based upon this observation, the officer received permission from the owners of the storage facility to walk a canine unit through the hallway.  The canine positively alerted the officer to the presence of contraband in a locker rented by the defendant.  The Pennsylvania Supreme Court held that, according to the United States Supreme Court in 
Place
, the canine sniff did not constitute a search under the fourth amendment.  However, the Pennsylvania Supreme Court ruled that under their state constitution, the canine sniff must be based upon some articulable facts that give rise to a reasonable suspicion that contraband is located in the place being sniffed by the canine.  
Johnston
, 515 Pa. 454, 530 A.2d 74.

In an Alaskan case, 
Pooley v. State
, 705 P.2d 1293 (1985), law enforcement agents conducted two canine sniffs of luggage.  One took place in California, which the court did not address because the Alaska Constitution
(footnote: 5) does not apply to agents or persons in California, and the second occurred upon the defendant's arrival at Anchorage International Airport.  See Alaska Const., art. I, §14.  The Court ruled that a canine sniff is not a search under the fourth amendment, pursuant to 
Place
, 462 U.S. at 707, 77 L. Ed. 2d 110, 103 S. Ct. at 2644-45.  However, as the courts in New Hampshire, New York, and Pennsylvania held, the state constitution may afford more protection.  The Alaska Court of Appeals ruled that a canine sniff should be governed by the principles of 
Terry
 and its progeny; the government must be able to point to articulable facts that give rise to a reasonable suspicion that the object being sniffed contains contraband.  
Pooley
, 705 P.2d at 1311.

These cases indicate a similar application of 
Terry
 principles to canine sniffs.  While there is no uniformity throughout the nation for this approach, the question is clearly one that could reasonably apply 
Terry
 and its progeny.  Therefore, we hold that a canine sniff is not a search under the fourth amendment, pursuant to 
Place
, 462 U.S. at 707, 77 L. Ed. 2d 110, 103 S. Ct. at 2644-45.  However, we also hold that to conduct a canine sniff, the government must have a reasonable suspicion of criminal activity, based upon articulable facts, under article I, section 6, of the 1970 Illinois Constitution (Ill. Const. 1970, art. I, §6).

For the foregoing reasons, the judgment of the circuit court of Wayne County is affirmed. 

Affirmed.

HOPKINS and KUEHN, JJ., concur.

FOOTNOTES
1:
"The people shall have the right to be secure in their persons, houses, papers, and other possessions against unreasonable searches, seizures, invasions of privacy, or interception of communications by eavesdropping devices or other means.  No warrant shall issue without probable cause supported by affidavit particularly describing the place to be searched and the persons or things to be seized."  Ill. Const. 1970, art. I, §6.

2:
Part I, article 19[,] of our Constitution accords "[e]very subject ... a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions."  
Pellicci
, 133 N.H. at 532, 580 A.2d at 716 (quoting N.H. Const., part I, art. 19).

3:
"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  N.Y. Const., art. I, §12.

4:
"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."  Pa. Const., art. I, §8.

5:
"The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated.  No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Alaska Const., art. I, §14.