482 So.2d 512 (1986)
Robert George CARDWELL, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. BE-296.
District Court of Appeal of Florida, First District.
January 23, 1986.
*513 Frank E. Sheffield, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and John W. Tiedemann, Asst. Atty. Gen., Tallahassee, for appellee.
BARFIELD, Judge.
Robert George Cardwell, Jr. entered a plea of nolo contendere to trafficking in marijuana, reserving the right to appeal the trial court's denial of his motion to suppress. He contends that the evidence seized as the result of a warrantless police roadblock set up to apprehend drug traffickers by stopping cars without any articulable suspicion of illegal activity should be suppressed because the roadblock constituted an illegal search and seizure, in violation of the Fourth Amendment to the United States Constitution. The facts of this case demonstrate that the seizure and subsequent search were reasonable and therefore not in violation of the Fourth Amendment to the United States Constitution. We affirm the trial court's denial of the motion to suppress.
The Florida Department of Law Enforcement (FDLE) was concerned with an expanding problem of transportation of illegal drugs over Florida highways, as evidenced by data collected and analyzed from throughout the state. FDLE approached the Florida Highway Patrol (FHP) with the idea of establishing roadblocks in order to use dogs highly trained and reliable in narcotics detection (sniff dogs) to locate motor vehicles transporting illegal drugs. FDLE contemplated that the effort would require the expertise of both agencies as well as other state and local officials, in order to be safely and effectively conducted. Supervisory personnel of FDLE and FHP, legal staffs of both agencies, the local state attorney, the Department of Transportation, and other representatives of law enforcement participated in the development of the plan for the roadblock.
The roadblock was set up to block traffic in the northbound lanes of U.S. Highway 27 just south of the Florida-Georgia border, using orange cones to make those lanes flow into a single lane. At the south end of the roadblock there were positioned flashing lights provided by the Department of Transportation and an FHP trooper who observed approaching vehicles. When a car arrived at the check point, the vehicle was stopped by the FHP trooper, who requested the driver to produce his license and vehicle registration. At this point another FHP trooper, a dog handler with a sniff dog, and an FDLE agent walked around the vehicle, allowing the dog to sniff it. If nothing was detected during the sniff, the vehicle was allowed to depart. If the dog alerted, the car was pulled over to the side of the highway and the driver was further questioned by the FDLE agent. The driver was given an opportunity to execute a consent form allowing the investigators to look into the vehicle. The plan initially called for every vehicle to be stopped, but when the FHP troopers felt that traffic back-up was creating a hazard, the operation was suspended and all cars were waved through until the traffic cleared. The operation was then recommenced and continued with the checking of every car until another traffic hazard situation developed.
The facts of appellant's case are uncontroverted, except for the length of delay at the roadblock and the discussion between appellant and state officers concerning consent to search his motor vehicle, both of which issues were resolved in favor of the state based on substantial competent evidence in the record. Appellant approached the check point at approximately 4:45 p.m. on January 12, 1984. He was asked for his *514 driver's license and his registration. He showed a driver's license to the officer and stated that he did not have a registration for the vehicle. He was advised that there would be a dog walking around the car and that he should not hang his arm or hand out of the window. The dog first alerted to the passenger's door, then to the trunk area. Another dog was called in and also alerted when it sniffed the automobile. Appellant was told to pull over to the shoulder of the road. After a discussion with the officials, the substance of which is in dispute, appellant gave his consent to an FDLE agent to search his car. The trunk of the car was pried open, revealing four bales of marijuana. Appellant was arrested and transported to the Gadsden County Jail, where he made incriminating statements indicating that he had been acting as a drug courier for parties in Alabama and Florida.
The authorities stopped 278 of the 554 vehicles passing through the roadblock. Appellant was the only person arrested. His argument, that only one arrest resulting from so many stops evidences an unreasonable intrusion into the lives of innocent citizens, is spurious at best. The reasonableness of the intrusion is determined on an individual basis taking into account all the relevant circumstances, and does not take the form of a statistical abstract. It should be noted, however, that this single arrest netted over 100 pounds of marijuana (a trafficking offense calling for mandatory state prison confinement). Appellant received 30 days county confinement followed by probation, based on the state's request for mitigation, because he rendered substantial assistance to law enforcement authorities by identifying source and destination operatives in the trafficking of illegal drugs in Florida and Alabama. A bare comparison of numbers, as appellant has urged, is therefore misleading, as well as an improper basis for determining the reasonableness of a search and seizure.
The United States Supreme Court has set out some parameters for courts to use in determining the issue of reasonableness under the Fourth Amendment. What is clear is that the exercise of unbridled discretion by law enforcement officers in situations involving stops and searches is not reasonable. Reasonableness involves both a balancing of interests and a common sense evaluation of the propriety of the examined conduct. It is not a concept that can be straight-jacketed by absolute definitions or artificial contrivances identified by catch-words and phrases. Law enforcement authorities must consider the circumstances surrounding the proposed activity in each case in light of the fact that their actions will have to withstand judicial scrutiny. Although it is desirable to give law enforcement authorities bright line rules within which to operate, the reasonableness standard required by the Fourth Amendment does not lend itself to absolute definition. Law enforcement officials, however, should have some assurance of the correctness of the exercise of their best collective judgment at the command level. Although we have found no authority directly on point, opinions of the United States Supreme Court in related but factually disimilar cases suggest that the judgment of the law enforcement officials was properly exercised under the circumstances of this case.
In Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979), a police cruiser stopped an automobile for a random driver's license check without any suspicion of improper conduct. The officer observed marijuana in plain view within the automobile. The Supreme Court held:
[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. This holding does not preclude the State of *515 Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.
The Supreme Court has said that the use of sniff dogs is not a constitutionally prohibited search under the Fourth Amendment and that a sniff dog's "alert" can constitute probable cause to conduct a search. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Once probable cause exists to search a motor vehicle, no warrant need be obtained prior to the search. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Just as no police officer need close his eyes to contraband in plain view, no police officer armed with a sniff dog need ignore the olfactory essence of illegality.
Under the particular circumstances of this case, we hold that Florida's interest in interdicting the flow of illegal drugs over its highways outweighs the minor intrusion on the privacy of the motoring public caused by this roadblock. The momentary stop of innocent drivers by uniformed law enforcement officers is only a slight inconvenience which a person must expect to encounter when exercising the privilege of operating a motor vehicle on the highways of this state. The devastating financial and human waste occasioned by the use of drugs in this state and others, like the death and mayhem caused by the drunk driver, is no longer open to question. The cooperation of Florida's citizens, required to sacrifice a few moments of their time, is a small price to pay to combat this menace.
We certify to the Supreme Court as a question of great public importance,
Is evidence seized as a result of a warrantless police roadblock set up to apprehend drug traffickers with the use of dogs trained in narcotics detection after stopping motor vehicles without any articulable suspicion of illegal activity necessarily inadmissible at trial because the roadblock constituted an illegal seizure and search in violation of the Fourth Amendment to the United States Constitution?
The trial court's order denying appellant's motion to suppress is AFFIRMED.
ERVIN and JOANOS, JJ., concur.