United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 25, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-50240

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MELCHOR COTA-LOPEZ,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

(EP-02-CR-1072-1-PRM)

Before HIGGINBOTHAM, SMITH, and WIENER, Circuit Judges.

PER CURIAM:[*]

Melchor Cota-Lopez was convicted in a bench trial of conspiracy to possess with intent to distribute and possession with intent to distribute five kilograms or more of cocaine and maintaining a place for the purpose of distributing a controlled substance. He was sentenced to concurrent terms of 144 months' imprisonment, concurrent terms of three and five years' supervised release, and a $10,000 fine.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Cota-Lopez challenges the district court's denial of his motion to suppress evidence discovered during a warrantless search of his residence. We accept the district court's findings on a motion to suppress unless clearly erroneous, but we review *de novo* the district court's ultimate conclusion on the constitutionality of the law enforcement action.[1] We consider the evidence in the light most favorable to the prevailing party.[2]

Cota-Lopez was arrested following a consent search at his residence on May 13, 2002. Earlier that day, narcotics officers were conducting routine surveillance at a self-packing store when they observed Cota-Lopez arrive with three other men to collect boxes. The officers followed the men, watching as they visited a hardware store and travel agency before returning to Cota-Lopez's residence. Two of the men subsequently left the residence, and the officers eventually stopped them when they made an improper lane change at an intersection near the residence. They gave conflicting responses to the officers' questions, but both denied having been at Cota-Lopez's residence.

The officers decided to conduct a knock-and-talk at the residence. Since there was no direct path to the front door, the

---

[1] *United States v. Chavez-Villarreal*, 3 F.3d 124, 126 (5th Cir. 1993).

[2] *United States v. Ishamael*, 48 F.3d 850, 853 (5th Cir. 1995).

officers approached the house by walking up the driveway toward the garage, which was open. As they neared the garage, they were greeted by Carmine Cota-Lopez, who was standing just inside the inner screen door. The officers entered the garage, and Carmine invited the officers inside.

As the officers entered the house, another officer arrived at the scene with a drug-sniffing dog. He remained on the sidewalk outside the residence, ready to assist in the event that permission was granted to search the residence. While on the sidewalk, however, the narcotics dog immediately detected an odor and pulled the officer toward the front door of the Residence. Once there, she gave a full alert to the presence of narcotics.

Inside the house, the officers spoke with Cota-Lopez in an effort to gain consent to search the house. According to the officers, Cota-Lopez appeared excited and shaken, and he asked the officers whether they had a search warrant. The officers admitted that they did not, but they told him that they had a positive canine alert on the house and that they felt they had enough information to obtain a warrant. The officers told Cota-Lopez that they would leave to try to obtain a warrant if Cota-Lopez did not feel comfortable consenting. Cota-Lopez consented, leading the officers to a back room containing over 800 pounds of cocaine, cash, and drug paraphernalia.

## II

Cota-Lopez contends that the police officers' entry to his garage was illegal and that his subsequent consent to a search of the residence must be suppressed as fruit of the illegal entry. He asserts that the canine sniff of the front door of his residence was an illegal search and that the police used the illegal sniff to coerce his consent to a search of the residence.

"A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment."[3] The protection afforded by the Fourth Amendment extends to a garage that is connected to a person's residence.[4]

When consent is considered to have validated a warrantless search, we must examine "the totality of the circumstances to determine whether the consent was knowingly and voluntarily given."[5] Whether consent to search was voluntary or was the product of duress or coercion is a question of fact based on the totality of the circumstances.[6]

---

[3] *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001).

[4] *See Taylor v. United States*, 286 U.S. 1, 6 (1932).

[5] *United States v. Davis*, 749 F.2d 292, 294 (5th Cir. 1985).

[6] *United States v. Solis*, 299 F.3d 420, 436 (5th Cir.), *cert. denied*, 537 U.S. 1060, 1094 (2002); *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997).

4

Cota-Lopez concedes that as the police walked up the driveway, the garage door was open; that as the officers approached, they could see his wife standing behind the screen door inside the garage; and that the officers entered the garage area after his wife opened the screen door and greeted them. Mrs. Cota-Lopez was not in custody, and she more than cooperated with the officers by greeting them and inviting them to approach and enter the garage and the residence. Under the totality of the circumstances, Cota-Lopez has not shown that the officers' entry to the garage violated the Fourth Amendment.[7]

Cota-Lopez next asserts that the police used an illegal dog search to coerce his consent to a search of his house. We need not address whether the canine sniff was a search, however, because we find that Cota-Lopez's consent was freely and voluntarily given.

The voluntariness of a suspect's consent is a question of fact to be determined from the totality of the circumstances surrounding the search.[8] To determine whether consent is voluntarily given, we examine a number of factors, including: "1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and

_____

[7] *See Solis*, 299 F.3d at 436; *Tompkins*, 130 F.3d at 121.

[8] *Ohio v. Robinette*, 519 U.S. 33, 40 (1996).

intelligence; and 6) the defendant's belief that no incriminating evidence will be found."[9]  Each factor supports the district court's finding that Cota-Lopez's consent was voluntarily given. Cota-Lopez was not in custody when the police officers sought his consent to search his residence.  The police did not use coercive or forceful tactics.  The police readily admitted that they did not have a warrant, informed Cota-Lopez that he could refuse to consent to a search, and agreed to leave if he did so.  As the district court found, "Detective Serrano explained to defendant Melchor that if he did not feel comfortable giving consent to the search, that the officers would leave to secure a search warrant... he was specifically informed that his cooperation was voluntary...." Under the totality of the circumstances, we can discern no clear error in the district court's conclusion that Cota-Lopez's implied consent to the search of his residence was voluntary.[10]

Cota-Lopez does not dispute any of these facts, but rather focuses solely on the comment by one of the officers that a canine had alerted to the presence of drugs in the house.  Cota-Lopez urges that this canine sniff was an illegal search and that his consent was tainted.  Only one circuit has held that a dog sniff at

---

[9] *United States v. Hernandez*, 279 F.3d 302, 307 (5th Cir. 2002) (citing *United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000)).

[10] *See Tompkins*, 130 F.3d at 121; *United States v. Richard*, 994 F.2d 244, 251 (5th Cir. 1993).

the front door of a dwelling may be a search.[11]  In *United States v. Thomas*, police used a narcotics dog to sniff for narcotics outside an apartment door.  Based largely on the dog's alert, the police then obtained a warrant to search the apartment.  The Second Circuit concluded that the sniff was an illegal search and that the warrant lacked probable cause.[12]  However, the court upheld the subsequent seizure of evidence because the police acted in good faith reliance on the warrant.

We need not decide whether the sniff at Cota-Lopez's front door was a search because his subsequent consent was voluntary and independent.[13]  The officers stated only that, based upon the dog sniff, they "felt" that they had enough to obtain a search warrant and that they would attempt do so if Cota-Lopez refused consent; the officer never stated that the sniff was sufficient or that they would be successful in procuring a warrant.[14]  Nor did the police deceive or threaten Cota-Lopez.  To the contrary, the officers made it clear that Cota-Lopez was free to refuse consent and that the

---

[11] *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985).

[12] The opinion did not discuss whether the door to the apartment was from a public street or was accessible only after entering an apartment building.

[13] *United States v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993).

[14] In this case, however, the officers did have sufficient probable cause to obtain a warrant: they had conducted extensive surveillance, observed suspicious activity, and obtained a dog indication from the sidewalk outside Cota-Lopez's house.

officers would leave if he did so.  On these facts, Cota-Lopez's consent was voluntary.

The ultimate question in this case is whether there was consent – that is so even if the sniff were a search, a weak proposition on these facts at best.

III

The judgment of the district court is AFFIRMED.