878 So.2d 497 (2004)
Rafael ROSALES, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-348.
District Court of Appeal of Florida, Third District.
August 4, 2004.
*498 Charles M. Milligan, Key West, for appellant.
Charles J. Crist, Jr., Attorney General, and John D. Barker, Assistant Attorney General, for appellee.
Before COPE, GREEN and SHEVIN, JJ.
COPE, J.
Rafael Rosales appeals his convictions for cocaine trafficking and sale of cocaine. He argues that his motion to suppress evidence should have been granted. We conclude that under the unusual facts of this case, the trial court correctly applied the inevitable discovery doctrine and correctly denied the motion to suppress.

I.
On November 14, 2002, a confidential informant purchased one hundred dollars worth of cocaine from defendant-appellant Rosales. The confidential informant was controlled by two detectives from the Monroe County Sheriff's Office.
The following day, the confidential informant told the defendant that he wished to buy a half kilo of cocaine. The defendant stated that he would need to obtain that amount in Miami.
On November 16, the confidential informant went to the defendant's home. The defendant's wife indicated that the defendant was not there but reached him by telephone. The defendant spoke to the confidential informant and indicated that he would have the half kilo either later that day or the next day. The defendant also told the confidential informant that his wife would sell him a smaller amount of cocaine in the meantime. The confidential informant then purchased an amount of cocaine from the defendant's wife.
After leaving the defendant's house, the confidential informant advised the detectives that the defendant would be bringing the half kilo that night or the next day. He told the police that the defendant was driving a Mercedes automobile.
The detectives issued an order for other officers in Monroe County to be on the look out for the defendant's vehicle. Thereafter a patrol officer called the detectives saying he had located the defendant driving southbound on U.S. 1 from Key Largo toward Key West. The detectives told the patrol officer to follow the defendant and stop the defendant if the officer observed a traffic violation.
The detectives testified that they had two alternative procedures which they were pursuing. If the defendant were stopped in a traffic stop, then the detectives would come to the scene and a canine unit would also respond. During the traffic stop a drug sniff dog would conduct a drug sniff outside the vehicle to see if it *499 alerted on the cocaine the defendant was believed to be carrying.
If, however, the patrol officer did not observe a traffic violation and did not make a traffic stop, then the detectives would stop the defendant's car before he reached Key West and arrest him for the drug sale which had occurred on November 14. In that event there would be a search incident to that arrest or a search under other established procedure.
Of the two alternatives, the detectives preferred a traffic stop if possible. That was because in a traffic stop and dog sniff, the defendant would not necessarily become aware that there was a confidential informant. An arrest on probable cause for the November 14 cocaine sale, by contrast, would inevitably disclose the existence of the confidential informant.
As events turned out, the patrol officer made a traffic stop. The canine unit was tardy and did not arrive until after the patrol officer had finished writing a ticket. The drug sniff dog alerted on the cocaine which was in the car. The defendant was taken into custody. However, the defendant agreed to cooperate with the officers. The defendant was released without any charges being filed.
The defendant still did not know that there was a confidential informant in the case. On November 27, the defendant (without the knowledge of the detectives) re-initiated contact with the confidential informant and sold the confidential informant more cocaine. That ended the agreement for cooperation between the defendant and law enforcement.
The State then charged the defendant with trafficking in cocaine in an amount of two hundred grams or more, based on the cocaine found in the defendant's car on November 16.[1] The State also charged the defendant with two counts of sale of cocaine for the sales on November 14 and 27.[2]
The defendant filed a motion to suppress the cocaine seized from his car on November 16. After an evidentiary hearing, the trial court denied the motion.
The defendant filed a motion to dismiss the prosecution, alleging that the deputies had engaged in outrageous conduct. After an evidentiary hearing, that motion was denied as well.
The defendant entered into a plea agreement whereby he pled guilty to the charges, with a reservation of his right to appeal the denial of the motion to suppress and motion to dismiss. This appeal followed.

II.
At the outset of the hearing on the motion to suppress, the State informed the trial court that it would rely exclusively on the inevitable discovery doctrine to support the seizure of the cocaine on November 16. The State acknowledged that there had not been probable cause for the traffic stop. That was so because the patrol officer stopped the defendant for weaving in the traffic lane. The patrol officer based the stop on the fact that the defendant's wheel touched the white line at the edge of the roadway. The State conceded that the observations of the patrol officer were not sufficient to give the officer probable cause to believe that a traffic infraction had occurred. The State also acknowledged that the traffic stop had exceeded a permissible length of time, because the patrol officer had finished writing the traffic tickets, and had just given *500 them to the defendant at the time that the detectives and canine unit arrived. Thus, the traffic stop exceeded permissible time limits.
The State also took the position that the information the confidential informant had provided to the detectives was not sufficient to give rise to probable cause to believe that the defendant was transporting cocaine in his car on November 16. This concession was apparently based on the State's limited experience in the use of the particular confidential informant, who had only participated in a single drug purchase from this defendant on November 14.
The State argued, however, that the inevitable discovery rule was applicable. The State offered evidence that (a) the detectives already had probable cause to arrest the defendant on felony cocaine sale charges for the sale of cocaine on November 14; (b) the decision had been made to arrest the defendant on those charges on November 16, prior to the defendant's reaching Key West; (c) the detectives were stationed along the roadway in their vehicle prepared to make the arrest; and (d) the detectives would have made the felony arrest had the defendant not been stopped by the patrol officer for the alleged traffic violation. The court took testimony from the confidential informant, the two detectives, the patrol officer, another Monroe County officer, and the defendant. After hearing the testimony, the court denied the motion to suppress.
The Florida Supreme Court has explained the inevitable discovery rule as follows:
In Nix v. Williams, 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984), the United States Supreme Court adopted the "inevitable discovery" exception to the "fruit of the poisonous tree" doctrine. Under this exception, evidence obtained as the result of unconstitutional police procedure may still be admissible provided the evidence would ultimately have been discovered by legal means. In adopting the inevitable discovery doctrine, the Court explained, "[e]xclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." Id. at 446, 104 S.Ct. at 2510.
Maulden v. State, 617 So.2d 298, 301 (Fla.1993); Hatcher v. State, 834 So.2d 314, 317-18 (Fla. 5th DCA 2003).
"[E]vidence which was originally obtained improperly should not be suppressed, provided that it would have been legitimately uncovered pursuant to normal police practices." United States v. Seals, 987 F.2d 1102, 1108 (5th Cir.1993) (citations omitted); see also United States v. Zapata, 18 F.3d 971, 978-79 (1st Cir.1994); United States v. George, 971 F.2d 1113, 1121-22 (4th Cir.1992).
The trial court found that by the time of the traffic stop, the detectives had probable cause to arrest the defendant for two sales of cocaine: first, for the sale made directly by the defendant to the confidential informant on November 14, and second, for the sale by the defendant's wife (on the defendant's instructions) to the confidential informant on November 16.
The court went on to find that the two detectives had made the decision to arrest the defendant on November 16 before he reached Key West. The detectives were positioned in their vehicle to make the arrest based on the already-existing probable cause. They did not do so only because the patrol officer made his roadside traffic stop of the defendant instead.
Based on the evidence, the court found that the arrest would have been made on *501 probable cause had there not been the traffic stop, and the cocaine would inevitably have been discovered. We conclude that the facts found by the court are supported by the record, and that the inevitable discovery doctrine is applicable here.
In his alternative argument, the defendant maintains that his motion to dismiss should have been granted. His motion asserted that he was entrapped by reason of outrageous police conduct. See Munoz v. State, 629 So.2d 90, 98-99 (Fla.1993). The claim of constitutional violation is that the confidential informant had a pending charge of violation of probation and agreed to work with the police in the hope (but no promise) of leniency regarding the pending affidavit of violation. The use of such a confidential informant does not constitute a constitutional violation. See State v. Myers, 814 So.2d 1200, 1202-03 (Fla. 1st DCA 2002).
Affirmed.
NOTES
[1] Monroe County Circuit Court case number CFK-02-1303.
[2] Monroe County Circuit Court case number CFK-03-102.